Trina HENRY, Plaintiff–Appellant,

v.

MICHIGAN DEPARTMENT OF CORRECTIONS (MDOC); Joseph Abramajtys; Douglas Scott; Charlotte Tursky; Joan Biesiada, Defendants–Appellees.

No. 00–2051.

United States Court of Appeals, Sixth Circuit.

Dec. 18, 2001.

Before KEITH, KENNEDY, and BATCHELDER, Circuit Judges.

PER CURIAM.

Plaintiff–Appellant Trina Henry ("Henry") appeals the district court's grant of the Defendants–Appellees' motion for summary judgment in this civil rights action alleging denial of adequate health care. Henry raises one issue on appeal: whether the district court improperly granted Defendants' motion for summary judgment on the grounds that Henry failed to show that the Defendants violated her son's Eighth Amendment right to be free from cruel and unusual punishment. For the reasons set forth below, we AFFIRM the district court's judgment.

## I.  FACTUAL AND PROCEDURAL HISTORY

On January 25, 1996, the Michigan Department of Corrections ("MDOC") placed Henry's son, Theoplous Scott ("Theoplous") in the Muskegon Temporary Facility ("MTF"). Scott stayed continuously at MTF until June 6, 1998 for all but eleven days, at which time he was paroled.

On July 5, 1996, Theoplous filed a health care request complaining of stomach cramps. The following day, Theoplous was seen by Joan Biesiada ("Biesiada"), a registered nurse at MTF. Between July 6 and December 9, 1996, Theoplous filed seventeen more medical health care requests, complaining of serious stomach pain. In several of these requests, Theoplous specifically asked to see a medical doctor; one request stated that he feared for his life, and another stated that he believed that he might have stomach cancer. Throughout this period, however, Theoplous continued to be treated by Biesiada and other department health care providers. In November 1996, health care personnel performed a hemocult test, which detects blood in the stool, a symptom of cancer. The test yielded a negative result. Theoplous was also given an H. Pylori test, which detects bacteria in the stomach, a symptom of ulcers. This test yielded a positive result and Theoplous subsequently received treatment for ulcers.

The treatment did not relieve Theoplous' pain, and as a result, he filed a twenty-two-page complaint with the MTF grievance

coordinator, Defendant Douglas Scott ("Defendant Scott"). Defendant Scott rejected Theoplous' grievance form because it was longer than the MTF grievance procedure allowed. Theoplous did not appeal this decision beyond the first step of a three-step grievance filing process, nor did he re-write the twenty-two-page complaint as requested by Defendant Scott.

From April 11, 1997 to April 6, 1998, Theoplous filed twenty-two more health care requests. During this time, Theoplous was given a second hemocult test, which again yielded a negative result. He was also given a second H. Pylori test that returned positive, and a urine test for infections, which came back negative. Theoplous was again treated for ulcers because of the positive result on the H. Pylori test. During this year, Theoplous also wrote to Joseph Abramajtys, the Warden at MTF ("the Warden"), requesting health care. The Warden forwarded the letter to Charlotte Tursky ("Tursky"), the Health Unit Manager at MTF. In a memorandum dated January 23, 1998, Tursky informed Theoplous that his medical records had been reviewed and that he had been "treated professionally and in a timely fashion." On February 12, 1998, Theoplous had a surgical procedure to repair a hernia. The operating surgeon did not detect cancer while performing this procedure.

On April 11, 1998, Theoplous was sent to Hackley Hospital in Kalamazoo, MI, for exploratory surgery, during which time the doctors discovered that he had stomach cancer. On May 1, Theoplous was transferred to the Trusty Division and placed in Duane Waters Hospital. Theoplous was paroled on June 6, 1998, and died two-and-one-half months later of stomach cancer.

Based on these facts, Henry filed a lawsuit in district court on behalf of her son, arguing that the Defendants–Appellees violated Theoplous' Eighth Amendment right to be free from cruel and unusual punishment by denying him adequate medical care. The district court rejected her argument and granted summary judgment in favor of the Defendants. The district court then denied Henry's motion for reconsideration and relief from summary judgment. Henry thereafter filed this timely notice of appeal.

## II. ANALYSIS

We review the district court's decision granting summary judgment *de novo*, using the same standards applied by the district court. *See Davis v. Sodexho Cumberland College Cafeteria*, 157 F.3d 460, 462 (6th Cir.1998). Summary judgment is proper if the evidence submitted shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See City Management Corp. v. U.S. Chemical Co.*, 43 F.3d 244, 250 (6th Cir.1994). We consider all facts and inferences drawn therefrom in the light most favorable to the non-moving party. *Id.* However, the mere scintilla of evidence in support of the Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the Plaintiff. *Id.*

In order for Henry to succeed in her claim that Defendants–Appellees violated Theoplous' Eighth Amendment right, she must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Mere negligence or malpractice is insufficient to establish an Eighth Amendment violation. *Id.* The Supreme Court has further explained that the *Estelle* standard contains

both an objective component—whether the deprivation was sufficiently serious—and a subjective component—whether the prison official acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 838–39, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

■ We hold that Henry's claim fails both prongs of the *Estelle* standard. With respect to the objective component, nothing in the record suggests that the care provided by Biesiada and Tursky was objectively beyond negligence and reached the difficult standard of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251. Although hindsight may suggest the benefit of earlier exploratory surgery, there is no evidence that the decision to conduct exploratory surgery on April 11, 1998 falls below the accepted standard of care. Moreover, the record does not suggest that there were other testing procedures that would have detected Theoplous' stomach cancer faster than the hemocult tests that were administered. Lastly, Defendant Scott's decision to reject Theoplous' grievance form is not enough for Henry to satisfy the *Estelle* standard. Defendant Scott's decision to require a short, more manageable grievance form is a reasonable request and does not rise to the level of objectively wanton behavior. Furthermore, Defendant Scott gave Theoplous the opportunity to resubmit his grievance, but Theoplous chose not to amend the grievance.

■ Henry's claim also fails the subjective component of the *Estelle* standard. The MTF staff consistently responded to Theoplous' requests for medical attention. For example, after Theoplous began to complain of stomach problems, he was treated by Biesiada over twenty times, as well as by other staff members. He was tested for symptoms of stomach cancer on two occasions, and both tests returned negative. Theoplous was also tested for symptoms of stomach ulcers on two occasions, both yielding positive results, which prompted the staff to treat him for ulcers. This pattern of testing and responsive treatment does not show the type of wanton or intentional behavior required by the Supreme Court to establish a constitutional violation as discussed in *Estelle* and *Farmer.* Based on the two negative cancer test results, it is difficult to posit that the Defendants–Appellees knowingly disregarded an excessive risk to Theoplous' health. While Henry may argue that a different diagnostic test could have been better suited to respond to her son's complaints or that such testing could have begun sooner, such arguments speak to mere negligence, not to the wanton and willful disregard for health and safety that is required by *Estelle* and *Farmer.*

■ For these reasons, we hold that the district court did not err in granting summary judgment in favor of Defendants–Appellees.[1]

## III. CONCLUSION

For the reasons set forth above, we AFFIRM the judgment of the Honorable

---

**1.** Henry argues that the district court erred in granting summary judgment before discovery concluded. We reject this argument. According to the rules of civil procedure, summary judgment may be granted at any time. Fed.R.Civ.P. 56(b). Moreover, the evidence on the record indicates that there was no genuine issue of material fact with respect to Henry's Eighth Amendment claim. Further discovery would, at best, have revealed that the Defendants were negligent in diagnosing or treating Theoplous' medical condition. As we discussed, evidence of such negligence would not be sufficient to satisfy the *Estelle* or *Farmer* standards. Therefore, the district court was correct in granting summary judgment before discovery had concluded.

Robert Holmes Bell of the United States District Court for the Western District of Michigan.